UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

MOUAFAK AL SABSABI,

                              Defendant.

**STATEMENT OF REASONS
FOR SENTENCE**
14-CR-583 (JBW)

**Appearances**

    **For United States:**

        Robert L. Capers
        United States Attorney, EDNY
    By:    Samuel P. Nitze

    **For Defendant:**

        Michael P. Padden
        Federal Defenders of New York

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

| | | |
|---|---|---|
| **I.** | **Introduction** | 2 |
| **A.** | **Instant Offense: Conspiracy to Sell Counterfeit Currency** | 2 |
| **B.** | **Arrest** | 3 |
| **C.** | **Guilty Plea** | 3 |
| **D.** | **Sentencing** | 4 |
| **II.** | **Offense Level, Category, and Sentencing Guidelines Range** | 4 |
| **III.** | **Law** | 5 |
| **IV.** | **18 U.S.C. § 3553(a) Considerations** | 6 |
| **V.** | **Sentence** | 8 |
| **VI.** | **Conclusion** | 8 |

## I.   Introduction

Defendant Mouafak Al Sabsabi was prosecuted for his involvement in an international

organization that produces and sells counterfeit currency.  He pled guilty to conspiring to sell this

money in violation of section 371 of Title 18 of the United States Code.

He is a 68-year-old father with six adult daughters.  Born and raised in Syria, he owned a

home and built a business only to see both destroyed in the current civil war.

Al Sabsabi immigrated to the United States with his wife two years ago.  He has no

education beyond junior high school and cannot speak English.  His children are scattered in

Europe, the United States, and Syria.  This is his first contact with the criminal justice system.

He has been sentenced to time served of four months in prison and 17 months of house

arrest; three years of supervised release; and a $100 special assessment.  He is subject to

deportation.

### A.  Instant Offense: Conspiracy to Sell Counterfeit Currency

In September 2011, a confidential government source ("source") traveled to Lebanon to

investigate an international organization engaging in the trade of high-quality counterfeit United

States currency.  Presentence Investigation Report ("PSR") ¶¶ 4-5.  The source discussed the

potential purchase of counterfeit United States dollars with a member of the organization, Ali Al-

Maser, who introduced the source to Louay Ibrahim Hussein as the person who would complete

any transaction on Al-Maser's behalf.  *Id.* ¶¶ 5, 8.

In June 2014, after a series of communications and exchanges in Lebanon and Cyprus,

the source met Hussein in Malaysia to purchase approximately $170,000 in counterfeit United

States dollars.  *Id.* ¶¶ 20, 22.  An undercover agent ("agent") accompanying the source paid

Hussein $10,000 in genuine United States dollars as an initial payment toward the purchase price

of approximately $51,000 in genuine United States dollars.  *Id.* ¶ 22.

In July 2014, Hussein called the confidential source, who was in Brooklyn, and asked that the remainder of the $51,000 be paid to defendant, Hussein's associate. *Id.* ¶ 23. Defendant offered to accept payment of the debt owed to Hussein. *Id.* ¶ 24. He told the source that Hussein urged him to provide the agent with an additional sum of counterfeit United States dollars as a first step towards a larger sale. *Id.* ¶ 23. Al Sabsabi then provided $4,000 of counterfeit United States dollars to the agent in exchange for $1,200 in genuine United States dollars. *Id.* ¶ 24. The counterfeit currency Al Sabsabi provided had the same origin as the currency the source purchased from Hussein in Malaysia. *Id.* ¶ 25.

In August 2014, defendant was recorded collecting $5,000 from the agent on behalf of Hussein. Hussein had demanded the payment before any additional sales of counterfeit currency would be made. Defendant was also recorded stating that he could provide an additional $500,000 in counterfeit United States dollars to the agent in New York. *Id.* ¶ 28.

## B. Arrest

Defendant was arrested in August 2014 in Garden City, New York. He made post-arrest statements, but was deemed uncooperative. *Id.*

## C. Guilty Plea

Defendant was charged in a two-count indictment with Conspiracy to Sell Counterfeit Currency (Count I) and Dealing in Counterfeited Currency (Count II). *See* 18 U.S.C. §§ 371, 470, 473; Indictment, ECF No. 10. He was charged with conspiring to sell at least $674,000 in counterfeit United States dollars. This amount is the sum of the $170,000 he accepted payment for; the $4,000 he later sold to the agent; and the $500,000 he said he could provide the agent. PSR ¶ 28.

Pursuant to an agreement with the government, Al Sabsabi pled guilty to Count I. *Id.* ¶ 1; Sentencing Hr'g Tr. of Oct. 1, 2016, ECF No. 25, at 18:25-19:15. No mandatory minimum term

of imprisonment applies. The maximum term of imprisonment is five years. *See* 18 U.S.C. § 371; PSR ¶ 74.

In the plea agreement, defendant consented to the forfeiture of $6,200. PSR ¶ 85. Since he has no funds, his children have agreed to pay this sum. *See* Sentencing Hr'g of May 31, 2016.

Count II was dismissed on the government's motion. *See id.*

### D. Sentencing

The sentencing proceedings were videotaped to develop an accurate record of courtroom atmosphere, as well as the factors and considerations that a court evaluates in imposing a sentence. *See* 18 U.S.C. § 3553(a); *see also In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II.    Offense Level, Category, and Sentencing Guidelines Range

Al Sabsabi's base offense level is 9. PSR ¶ 33. His criminal history category is I. *Id.* ¶ 46. The offense level was increased by 14 points pursuant to U.S.S.G. §2B5.1(b)(1) and §2B1.1(b)(1)(H) because the face value of the counterfeit notes exceeded $550,000; increased by two points under U.S.S.G. §2B5.1(b)(5) because part of the offense was committed outside the United States; reduced by two points pursuant to U.S.S.G. §3E1.1(a) because defendant has demonstrated acceptance of responsibility; and decreased by an additional point under U.S.S.G §3E1.1(b) because Al Sabsabi notified the government of his intention to enter a plea of guilty. *Id.* ¶¶ 34-42. The total offense level is 22, yielding a Guidelines sentencing range of 41 to 51 months. *Id.* ¶¶ 43, 75.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from them in the interest of justice as well as in the light of other statutory concerns as expressed in section 3553(a) of Title 18. 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now,

4

however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

## III.    Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of Title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *see Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National

5

Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV.    18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). For the reasons stated on the record, a significant custodial sentence is unnecessary. *See* Sentencing Hr'g of May 31, 2016.

Al Sabsabi was born in 1947 in Damascus, Syria. PSR ¶ 51. His father owned a grocery store, and his mother worked as a nurse. *Id.* ¶ 52. He had good relationships with both parents. *Id.* ¶ 51.

Although defendant was raised as an only child, he has 12 paternal half-siblings and seven maternal half-siblings. He described his youth as happy. Five of Al Sabsabi's siblings now live in Syria; three live in Germany; two live in the Philippines; one lives in Saudi Arabia; and he is unsure about the others. *Id.* ¶ 52.

Defendant's primary language is Arabic; he does not speak English. *Id.* ¶ 63. He worked in his father's store from age 16 to 19. *Id.* ¶¶ 61, 70. He was conscripted into the Syrian Army primarily as a chauffeur in 1967 during a war with Israel, and discharged in 1970. *Id.* ¶ 62.

Defendant worked as a cab driver in Damascus. *Id.* ¶ 68. He also was employed as a welder and electrician. *Id.* ¶¶ 66-67. In 1991, defendant opened a real estate office, earning approximately $2,500 a month. *Id.* ¶ 65.

Al Sabsabi has been married to his wife for 44 years. They raised six daughters together. Three of their daughters live in Syria; two live in the United States; and one is seeking political asylum in Germany. All remain loving of him. *Id.* ¶ 53. One described him as a very good person and "the best father in the world." *Id.* ¶ 54.

Defendant's 58-year-old wife requires physical therapy. *Id.* She does not work. *Id.* ¶ 53.

Al Sabsabi traveled to the United States in 2012 for open-heart surgery. After his arrival in the United States, he underwent bypass surgery. Subsequently, he contracted pneumonia. *Id.* ¶ 58. He remained in the United States for approximately one year to recover before returning to Syria to see his daughters. *Id.* ¶ 55.

During Al Sabsabi's time in the United States, Syria became embroiled in a civil war. *Id.* According to Amnesty International, more than 50% of Syria's population has been displaced by the conflict; 250,000 have been killed; and 13.5 million are in urgent need of humanitarian assistance. *Syria's Refugee Crisis in Numbers*, AMNESTY INTERNATIONAL (Feb. 3, 2016), https://www.amnesty.org/en/latest/news/2016/02/syrias-refugee-crisis-in-numbers/.

Defendant stated that "he has nothing in Syria anymore." He was forced to close his real estate office because business declined at the start of the uprising. PSR ¶ 65. He owned farmland that was taken by ISIS and the Sons of Jabhat al-Nusra, both deemed terrorist organizations by the United States Department of State. His car was destroyed in an explosion. *Id.* ¶ 55.

Al Sabsabi and his wife relocated to the United States in 2014. He is a legal permanent resident. *Id.* The couple resides with their daughter Lina Samman, son-in-law, and grandchildren in Garden City, New York. *Id.* ¶ 56. Samman stated that she has no idea why defendant became involved in the instant offense, but surmised that it may have stemmed from his inability to speak English. *Id.* ¶ 54.

Defendant has been depressed since his arrest, and was scheduled to see a psychologist. *Id.* ¶ 59. He has no history of substance abuse and does not drink alcohol. *Id.* ¶ 60. He has no income and is financially supported by his daughter and son-in-law. *Id.* ¶¶ 72-73.

## V.  Sentence

Under section 3553(a)(2)(B) of Title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of the offense and the characteristics of the defendant, Al Sabsabi is sentenced to time served of four months in prison and 17 months house arrest, as well as three years of supervised release. A $100 special assessment is imposed. *See* 18 U.S.C. § 3013. No fine is levied because defendant has no substantial assets and is unlikely to be able to pay a fine. PSR at ¶¶ 72-73.

General and specific deterrence are achieved by the sentence imposed. Al Sabsabi has already served four months in prison and nearly a year and a half under house arrest. He in theory may be deported following his release from criminal custody, but it is unlikely he can be sent back to Syria while it is in chaos. Al Sabsabi will suffer the collateral consequences of a felony conviction, as well as the restrictive conditions of a three-year supervised release term.

## VI.  Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of Title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 6, 2016
Brooklyn, New York

8